**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

MITCHELL C M.,[1]

Plaintiff,

v.

FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,[2]

Defendant.

CASE NO. 3:25-CV-331-SJF

**OPINION and ORDER**

Plaintiff Mitchell C M. ("Mr. M") seeks judicial review of the Social Security Commissioner's decision denying Mr. M's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This Court may enter a ruling based on the parties' consent under 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g). [DE 7]. For the reasons discussed below, the Court **REMANDS** the decision of the Commissioner of the Social Security Administration ("SSA") for further administrative proceedings.

## I. OVERVIEW OF THE CASE

Mr. M filed applications for DIB and SSI on May 24, 2022, alleging disability beginning October 1, 2020 (later amended to an onset date of April 7, 2022). [DE 8 at 19,

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.
[2] Frank Bisignano became the Commissioner of the Social Security Administration on May 6, 2025. Under Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit.

21]; (Administrative Record 15, 17[3]; hereinafter "AR"). Mr. M was denied initially, on reconsideration, and after a telephone hearing before an administrative law judge ("ALJ"). (*Id.*). The ALJ issued this unfavorable decision on January 31, 2024. (AR 16). Mr. M requested further review of the ALJ's decision, which the SSA Appeals Council denied on February 11, 2025. (AR 1). Thus, the ALJ's decision became the final decision of the Commissioner. *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Mr. M filed suit in this Court on April 17, 2025. The Court has jurisdiction under 42 U.S.C. § 405(g). Mr. M filed his opening brief requesting remand for further administrative proceedings on September 26, 2025. The Commissioner filed his response in support of the ALJ's decision on December 8, 2025. The case became ripe on January 12, 2026, when Mr. M filed his reply in support of remand.

## II. APPLICABLE STANDARDS

### A. Disability Standard

To qualify for DIB and SSI, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R § 404.1572.

---

[3] Administrative Record page numbers are noted in the bottom right corner of the page in the Administrative Record document filed at docket entry 8.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB under the Act includes determinations of: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based on his Residual Functional Capacity ("RFC"); and, if not, (5) whether the claimant is able to perform other work. 20 C.F.R. §§ 404.1520. The claimant bears the burden of proof at every step except Step Five, where the burden of proof shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), as amended (Dec. 13, 2000).

**B. Standard of Review**

The Court has authority to review a disability decision by the Commissioner under 42 U.S.C. § 405(g). But this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); see *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir.

2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, the ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind her analysis to build the requisite "logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). If there is evidence that contradicts a finding of no disability, however, the ALJ must confront it and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014)(citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

## III. Discussion

### A. Summary of the ALJ's Decision Denying Benefits

Mr. M's telephone hearing before the ALJ took place on October 20, 2023.[4] (AR 15). Mr. M appeared along with an attorney. On January 31, 2024, the ALJ issued a written decision denying Mr. M's applications, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. § 404.1520.[5] (AR 12, AR 25).

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. Here, the ALJ determined that Mr. M had not engaged in substantial gainful activity since April 7, 2022, his amended alleged onset date. (20 C.F.R. § 404.1571 et seq. (AR 17).

At Step Two, an ALJ's inquiry focuses on whether the claimant's medically determinable impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. The ALJ concluded that Mr. M suffered from the following severe impairments: bipolar disorder/depression; generalized anxiety disorder; degenerative disc disease of the lumbar spine; and obesity. (AR 17). On the other hand, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or

---

[4] The administrative record also contains a transcript from a hearing held in March 2022. But, as the Commissioner explains in his response, this hearing is related to a prior application and is thus not at issue on review here.

[5] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to perform basic work functions. *See, e.g.*, 20 C.F.R. § 404.1522; S.S.R. 85-28, 1985 WL 56856 (Jan. 1, 1985). The ALJ found that Mr. M had the following nonsevere impairments: left ankle pain, intermittent explosive disorder, and nicotine dependence. (AR 18).

The ALJ concluded at Step Three that Mr. M does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526). The ALJ considered Listings 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root), 1.16 (Compromise of the cauda equine), 12.04 (Depressive, bipolar, and related disorders), and 12.06 (Anxiety and obsessive-compulsive disorders). (AR 18). Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Mr. M can perform his past relevant work based on his residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that an individual can do despite his limitations. 20 C.F.R. § 404.1545(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. The ALJ concluded that Mr. M

retained the RFC to perform less than the full range of medium work as defined in 20 C.F.R. 404.1567(c). The ALJ thus determined that Mr. M could perform medium work except that he

> can frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and crawl; due to moderate limitations in concentration, persistence or pace, he is restricted to understanding, remembering, and carrying out simple instructions for simple, routine tasks; no hourly production requirement, but could meet end of day goals; occasional interaction with supervisors; brief and superficial interaction with coworkers; no public contact; no team/tandem tasks; and able to be exposed to no more than occasional changes in the job setting.

(AR 19-20). Based on this RFC, at Step Four, the ALJ found that Mr. M could not perform past relevant work as a livestock breeder or inspector. (AR 24). Accordingly, the ALJ moved on to last step in the five-step sequential analysis to determine whether Mr. M could perform other work.

At Step Five, the burden of proof shifts to the Commissioner, who must "provid[e] evidence that demonstrates that other work exists in significant number in the national economy that [the claimant] can do, given his residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2); *see also* *Liskovitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009). The ALJ found that, while Mr. M could not perform any past relevant work, he retained the RFC to perform the representative jobs of cleaner – industrial, cleaner II, and dishwasher.

Finding that Mr. M could make an adjustment to other work that existed in significant numbers in the national economy, the ALJ determined that Mr. M was not

under a disability, as defined in the Act, from his amended alleged onset date of April 7, 2022, through the date of the ALJ's decision. (AR 25).

### B. Issues on Review

Mr. M raises two issues on review. First, Mr. M contends that the RFC omitted key mental health limitations based on his anger and panic episodes, in addition to limitations contained in the State Agency reviewer's opinions, in violation of SSR 96-8p. As to the latter portion of this argument, Mr. M contends that the ALJ failed to address limitations included in the checkbox portion of the state agency assessment completed by Dr. B. Randal Horton, Psy.D. [DE 11 at 8, citing AR 114-17]. Next, Mr. M contends that the ALJ mischaracterized evidence and the types and effectiveness of Mr. M's medical treatment in violation of SSR 16-3p. In response, the Commissioner maintains that the ALJ provided substantial support for Mr. M's mental health RFC assessment and that the ALJ's s subjective symptom analysis under SSR 16-3p was not patently wrong.

Finding that the ALJ failed to address all the moderate limitations recorded by Dr. Horton at the reconsideration level and otherwise failed to address how the RFC accommodated for these moderate limitations, the Court finds that remand is required.

### C. Analysis

Mr. M contends that the ALJ failed to account for significant portions of the state agency assessment from Dr. Horton when formulating his RFC. Since this argument is outcome determinative, the Court begins there.

"The RFC finding is central to the outcome of a Social Security case." *Holiday v. O'Malley*, No. 2:23-CV-302, 2024 WL 2860088, at *3 (N.D. Ind. June 5, 2024). An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* The RFC is the ***most*** someone "can do despite their mental and physical limitations." 20 C.F.R. § 404.1545(a)(1) and § 416.945(a)(1); SSR 96-8p(5) (emphasis added). The RFC is crafted based on "all the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite his or her impairment(s) – submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p. An RFC must thus account "all of the claimant's limitations supported by the medical record, including even moderate limitations in concentration, persistence, or pace." *Crump v. Saul,* 932 F.3d 567, 570 (7th Cir. 2019)

The "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)." The ALJ need not use any "magic words" in formulating a person's . . . RFC." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (quoting *Crump,* 932 F.3d at 570). But this "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge*, 984 F.3d at 1233.

**1. Mental RFC Findings**

The ALJ found Mr. M's bipolar disorder/depression and generalized anxiety disorder to be severe impairments at Step Two of the five-step analysis. (AR 17). Dr. B. Randal Horton, Psy.D., who reviewed Mr. M's applications at the reconsideration level, also found Mr. M's depression, bipolar disorder, and anxiety to be severe impairments. (AR 114).

When a claimant has a medically determinable mental impairment, SSA rates the claimant's degree of functional limitation in four broad areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace (often referred to as "CPP"); and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). These four broad functional areas of mental functioning are known as the "B criteria." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 et seq. The degrees of function are ranked on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4). SSA defines these terms as follows:

> a. No limitation (or none). You are able to function in this area independently, appropriately, effectively, and on a sustained basis.
> b. Mild limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.
> c. Moderate limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.
> d. Marked limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.
> e. Extreme limitation. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. §. 404, Subpt. P, App'x 1, § 12.00(F)(2).

Relevant here, the ALJ found that Mr. M has a moderate limitation in interacting with others (AR 19); a moderation limitation in CPP; (*Id.*); and a moderate limitation for adapting or managing himself. (*Id.*) Dr. Horton also rendered an opinion on this

inquiry, likewise finding that Mr. M has a moderate limitation in interacting with others; a moderate limitation in CPP; and a moderate limitation in adapting or managing oneself. (AR 115).

The Paragraph B criteria "are not an RFC assessment." SSR 96-8p, 1996 WL 374184, at *4. A mental RFC assessment must include "a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments . . . ." SSR 96-8p, 1996 WL 374184, at *4; *see also* *Powell v. Kijakazi*, No. 21-CV-01160-JES-JEH, 2023 WL 2653358, at *4 (C.D. Ill. Mar. 27, 2023). Dr. Horton recorded his opinion as to Mr. M's mental RFC assessment in a form section titled "Mental Residual Functional Capacity." (AR 116). There, the form provides a ""(1) a check-box type worksheet for the psychologist to assess the claimant's limitations and (2) a narrative section that contains a written assessment of the claimant's RFC." *Monday v. Comm'r of Soc. Sec.*, No. 4:23-CV-96, 2025 WL 865146, at *4 (N.D. Ind. Mar. 20, 2025) (citation omitted). The form explains the two portions of this section as follows:

> [t]he questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. . . . Any other assessment information deemed appropriate may be recorded in the . . . Additional Explanation text box.

(AR 116).

Dr. Horton completed both the check-box worksheet itemizing various functions for each category as well as the additional explanation text box section. The narrative discussion section that immediately follows each category's checkboxes was left blank.

As to Mr. M's CPP limitations, Dr. Horton filled out the "worksheet" portion of the form as follows:

Does the individual have sustained concentration and persistence limitations? **Yes**

| Sustained Concentration and Persistence Limitation | Rating |
|---|---|
| The ability to carry out very short and simple instructions | Not Significantly Limited |
| The ability to carry out detailed instructions | Not Significantly Limited |
| The ability to maintain attention and concentration for extended periods | Moderately Limited |
| The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances | Moderately Limited |
| The ability to sustain an ordinary routine without special supervision | Not Significantly Limited |
| The ability to work in coordination with or in proximity to others without being distracted by them | Not Significantly Limited |
| The ability to make simple work-related decisions | Not Significantly Limited |
| The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods | Moderately Limited |

(AR 116, AR 124). As stated, the narrative section that immediately followed was left blank. Next, as to Mr. M's social interaction limitations, Dr. Horton filled out the form as follows:

Does the individual have social interaction limitations? **Yes**

| Social Interaction Limitation | Rating |
|---|---|
| The ability to interact appropriately with the general public | Moderately Limited |
| The ability to ask simple questions or request assistance | Not Significantly Limited |
| The ability to accept instructions and respond appropriately to criticism from supervisors | Not Significantly Limited |
| The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes | Not Significantly Limited |
| The ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness | Not Significantly Limited |

(AR 117, AR 125). Again, the narrative section that immediately followed was left blank. Finally, as to Mr. M's adaption limitations, Dr. Horton noted as follows:

Does the individual have adaptation limitations? **Yes**

| Adaptation Limitation | Rating |
|---|---|
| The ability to respond appropriately to changes in the work setting | Moderately Limited |
| The ability to be aware of normal hazards and take appropriate precautions | Not Significantly Limited |
| The ability to travel in unfamiliar places or use public transportation | Not Significantly Limited |
| The ability to set realistic goals or make plans independently of others | Not Significantly Limited |

(*Id.*). As stated, Dr. Horton did not include a narrative explanation for this category. Instead, Dr. Horton appeared to provide one comprehensive explanation in the "Additional Explanation" subsection. There, Dr. Horton wrote:

> Clmt can do simple meals/chores/hygiene monthly varied socializing and driving due to anger issues; varied concentration.
>
> 10/2022 brought to hospital due to SI secondary to ill daughter and wife requesting divorce. Clmt discharged same day.
>
> Continues in psych tx to 1/2023; using gummies/THC to help increase appetite.
>
> Work adl requested but no received
>
> Within physical parameters, the evidence suggests that claimant can understand, remember, and carry out detailed, but not complex tasks. It appears that claimant would be able to manage occasional contact with the public but preclude sustained, intensive, interpersonal contact. The claimant would appear to work best alone, in semi-isolation from others or as part of a small group.

(*Id.*).

The ALJ found Dr. Horton's opinion to be persuasive, noting that Dr. Horton "assigned [Mr. M] with "moderate level mental limitations such as the ability to understand, remember, and carry out of detailed, but not complex tasks . . .." (*Id.*). The ALJ also noted that Dr. Horton's opinion was "generally consistent" with the mental RFC assessed by the ALJ, which was as follows:

> due to moderate limitations in concentration, persistence or pace, he is restricted to understanding, remembering, and carrying out simple

> instructions for simple, routine tasks; no hourly production requirement, but could meet end of day goals; occasional interaction with supervisors; brief and superficial interaction with coworkers; no public contact; no team/tandem tasks; and able to be exposed to no more than occasional changes in the job setting.

(AR 19-20).

### 2. Mr. M's Challenge to the Decision Based on Dr. Horton's Opinion

Mr. M contends that the ALJ's decision failed to address the moderate checkbox limitations recorded by Dr. Horton at the reconsideration level, instead only referencing Dr. Horton's narrative. Mr. M also argues that Dr. Horton's narrative explanation fails to capture all his checkbox limitation findings, and the ALJ thus inappropriately relied on this incomplete narrative in the decision. Mr. M's argument is chiefly based on the rationale in *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019). There, the Seventh Circuit observed that an ALJ cannot wholly ignore limitations noted in the checkboxes, explaining that "even if an ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms." *Id.* (citing *Yurt v. Colvin*, 758 F.3d 850, 859 (7th. Cir. 2014).

There appears to be no dispute that the ALJ relied only on Dr. Horton's narrative assessment. Dr. Horton's RFC narrative stated that Mr. M retained the ability "to understand, remember, and carry out detailed, but not complex tasks. . . ." and then assessed certain restrictions for Mr. M's social function limitations. (AR 117, AR 125). Finding Dr. Horton's opinion persuasive, the ALJ also noted that Dr. Horton assigned moderate mental limitations "such as the ability to understand, remember, and carry

out of detailed, but not complex tasks"—thereby restating a portion of the narrative assessment verbatim. (AR 23). The only other explanation given by the ALJ was that Dr. Horton's opinion was "generally consistent with the above [RFC]." (*Id.*). The Commissioner does not dispute the assertion that the ALJ failed to address the checkbox limitations in the decision. S*ee April P. v. O'Malley*, 2024 WL 4008738, *6 (S.D. Ind. Aug. 1, 2024) ("If the Commissioner does not respond to an argument raised by the claimant, it is unclear whether this is a tacit admission by the Commissioner that the ALJ erred or whether it was an oversight. Either way, the Commissioner has waived any response to this argument.")(cleaned up). Thus, the Court can only find that the checkbox limitation findings were not discussed.

This does not end the inquiry, though. "[A]n ALJ may disregard checkbox worksheet observations [] where the consultant's narrative 'adequately encapsulates and translates' them." *SCARLET F., Plaintiff, v. FRANK BISIGNANO, Comm'r of Soc. Sec., Defendant.*, No. 24 CV 1739, 2026 WL 2874082, at *4 (N.D. Ill. Sept. 24, 2026) (quoting *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). The Court must thus consider whether Dr. Horton's narrative adequately addresses the checkbox limitations noted. To reiterate, relevant here, Dr. Horton found Mr. M to be moderately limited in the following functional areas pertaining to CPP:

- Maintaining attention and concentration for extended periods[6];
- Performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances;

[6] SSA defines "extended periods" as approximate two-hour segments of time between arrival and first break, lunch, second break, and departure. *See* Program Operations System Manual (POMS) DI 25020.010.

- Completing a normal workday and workweek without interruption from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods.

Dr. Horton's RFC narrative then stated that Mr. M retained the ability "to understand, remember, and carry out detailed, but not complex tasks . . ." and then assessed certain restrictions for Mr. M's moderate social function limitations. (AR 117). Mr. M argues that the narrative fails to account for all the moderate CPP checkbox limitations, instead providing for an "unhindered ability to understand, remember, and carry out detailed tasks over an eight-hour workday." (*Id.*). Indeed, a narrative assessment that Mr. M can "understand, remember, and carry out [] detailed, but not complex tasks" does not "provide insight as to ability to meet employer demands of uninterrupted completion of tasks." *See Donald G. v. Kijakazi*, No. 321CV00164RLYMPB, 2023 WL 2957448, at *8 (S.D. Ind. Feb. 16, 2023), *report and recommendation adopted,* No. 321CV00164RLYMPB, 2023 WL 2643238 (S.D. Ind. Mar. 27, 2023). This narrative also fails to address the finding that Mr. M is moderately limited in his "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." *SCARLET F.*, 2026 WL 2874082, at *5.

The Commissioner appears to sidestep Mr. M's argument that Dr. Horton's narrative assessment fails to encompass all these moderate CPP checkbox limitations. [DE 19 at 6-7]. The Commissioner instead responds that the ALJ never said he was adopting Dr. Horton's findings in full. This is true—to reiterate, the ALJ only referenced that Dr. Horton found moderate mental limitations "such as the ability to understand, remember, and carry out detailed, but not complex tasks" and stated that Dr. Horton's

opinion was "generally consistent with the above [RFC]." (AR 23). At the outset, though this response merely emphasizes Mr. M's concerns, as the ALJ appeared to never address other checkbox limitations in Dr. Horton's opinion. This leaves a gap in the analysis about the persuasiveness of this opinion and the resulting RFC limitations. *See Lea Z. v. Bisignano*, No. 24-CV-3333, 2025 WL 2380681, at *5 (N.D. Ill. Aug. 15, 2025).

Next, the Commissioner concedes that *DeCamp* is applicable here but maintains that remand is not required because the ALJ "assessed significantly greater restrictions" that account for the moderate checkbox limitations—appearing to refer to the ALJ's RFC restrictions to simple instructions for simple, routine tasks with no hourly production requirement, but end of day goals. [DE 18 at 7-8]. In support, the Commissioner directs the Court to *Cain v. Bisignano*, 148 F.4th 490, 495, 498-99 (7th Cir. 2025); *Pufahl v. Bisignano*, 142 F. 4th 446, 460 n.27 (7th Cir. 2025); and *Hess v. O'Malley*, 92 F.4th 671, 678 (7th Cir. 2024).

But the Court cannot agree that the ALJ's discussion and resulting RFC limitations suffice to account for the moderate checkbox limitations found here. As Mr. M contends, the cases relied upon the Commissioner are distinguishable here. *Cain* is distinguishable based on the difference between the ALJ's discussions. There, the Court noted that the ALJ "adequately explained the portions of the [State Agency] reports that were either persuasive or conflicted with the other evidence in the record and appropriately considered both the narrative and checkbox sections of the reports." 148 F. 4th at 498. To reiterate, here, the ALJ only stated that he found Dr. Horton's opinion persuasive and noted that Dr. Horton assigned moderate mental limitations "such as

the ability to understand, remember, and carry out of detailed, but not complex tasks." The only other explanation given was that it was "generally consistent with the above [RFC]." (AR 23). Thus, while the ALJ appeared to rely on Dr. Horton's narrative, there was no discussion of Dr. Horton's checkbox limitations or whether the narrative captured them like in *Cain*.

*Pufahl* likewise presents a different scenario. It is true that, like Mr. M's ALJ, the ALJ in *Pufahl* limited the claimant to "simple and routine tasks." 142 F.4th 446, 460 n. 27 (7th Cir. 2025). But unlike the ALJ's RFC assessment here, the RFC in *Pufahl* noted that the "claimant can maintain attention and concentration for two-hour segments." *Id.* As the Court found, these limitations "naturally function as limitations on one's ability to complete a normal workday without interruption and to perform at a consistent pace." *Id.* Here, however, the ALJ did not include the latter limitation. Moreover, one of Dr. Horton's checkbox findings noted a moderate limitation in "maintaining attention and concentration for extended periods"—which, under agency policy, are defined as "approximate two-hour segments of time." *See* Program Operations System Manual (POMS) DI 25020.010. *See also MADELINE A. GALBRAITH, Plaintiff, v. FRANK J. BISIGNANO, Comm'r of Soc. Sec., Defendant.*, No. 25-C-694, 2026 WL 2655024, at *8 (E.D. Wis. Sept. 9, 2026)("*Pufahl* did not overrule the long line of cases that have consistently held that employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace.")(cleaned up).

The Court in *Hess* did find that RFC limitations that the claimant "'limited to a work environment with no fast-paced production quota or rate' and that 'any production requirements should be more goal oriented, such as based on a daily or weekly or monthly quota'" accounted for moderate limitations in attention and concentration, performing activities within a schedule, and completing a normal workday. 92 F.4th at 678. The ALJ here similarly included a RFC limitation of "no hourly production requirement, but could meet end of day goals," but as, Mr. M contends, the ALJ provided no discussion as to how this accommodates Mr. M's moderate limitations in his ability to maintain regular attendance and be punctual. *Justin C. v. O'Malley*, No. 1:22-CV-02235-RLY-MG, 2024 WL 958013, at *2 (S.D. Ind. Mar. 6, 2024)(distinguishing *Hess* on this basis).

Thus, without more, the Court cannot find that the ALJ adequately explained how these RFC limitations address all the checkbox limitations from Dr. Horton. *See, e.g.*, *Natalie H. v. Bisignano*, No. 1:24-CV-01983-SEB-MG, 2026 WL 512590, at *5 (S.D. Ind. Feb. 4, 2026), *report and recommendation adopted sub nom. Natalie A. H. v. Bisignano*, No. 1:24-CV-01983-SEB-MG, 2026 WL 510414 (S.D. Ind. Feb. 24, 2026)("It seems the ALJ may have included [limitation to no production rate pace but can meet end of day goals] to account for the consultants' checkbox moderate limitation for time off task. But that much is unclear . . .."; and *Dawn W. v. Berryhill*, 2019 WL 2085196, at *3 (N.D. Ill. May 13, 2019)(noting that end of day goals "envisions a tortoise-and-the-hare scenario in which [the] plaintiff would be unable to keep pace consistently throughout the day but could somehow catch up later in the day").

In sum, the ALJ's apparent reliance only on Dr. Horton's narrative discussion, without any explanation as to whether it encompassed the moderate CPP checkbox limitation findings or how the RFC accounts for Dr. Horton's other moderate CPP limitation checkbox findings, requires remand for further proceedings. *See, e.g.*, *Monday*, 2025 WL 865146, at *6-7; *Joesha D. v. Bisignano*, No. 23 C 2103, 2026 WL 540146, at *7 (N.D. Ill. Feb. 26, 2026); *see also Thomas v. Bisignano*, No. 2:25-CV-82-AZ, 2026 WL 835891, at *8 (N.D. Ind. Mar. 26, 2026)(observing that "the Seventh Circuit has required more specificity when analyzing a claimant's concentration, persistence, and pace")(internal citation omitted).

**3. Mr. M's Other Arguments**

As stated, Mr. M brings other arguments in support of remand. As the Court has identified issues based on Dr. Horton's opinion, the Court will not address his other arguments here. The ALJ will have the opportunity to fully discuss and evaluate Mr. M's other arguments on remand.

**IV. Conclusion**

For these reasons, the Court **REMANDS** the Commissioner's decision for further proceedings.

**SO ORDERED** this 28th day of September 2026.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge